Donald R. HOBDY, Jr., 436–23–7446 Private First Class U.S. Marine Corps, Petitioner

v.

UNITED STATES, Respondent.

NMCM 9501161.

U.S. Navy–Marine Corps Court of Criminal Appeals.

12 March 1997.

**654**

LT James P. Benoit, JAGC, USNR, Appellate Defense Counsel.

LT Randy S. Kravis, JAGC, USNR, Appellate Government Counsel.

## ORDER DENYING PETITION FOR EXTRAORDINARY RELIEF IN THE NATURE OF A WRIT OF HABEAS CORPUS

OLIVER, Judge:

On 23 January 1995 a military judge convicted the petitioner,[1] pursuant to his pleas, of wrongful use of marijuana and methamphetamine, possession of methamphetamine, and distribution of methamphetamine, marijuana, and LSD, in violation of Article 112a, Uniform Code of Military Justice, 10 U.S.C. § 912a (1994)[hereinafter UCMJ]. The general court-martial sentenced him to 5 years, 11 months of confinement, total forfeiture, reduction to pay grade E–1, and a dishonorable discharge. In accordance with a pretrial agreement, the convening authority suspended all confinement in excess of 2 years for a period of 12 months after the period of confinement.

This case is before us a second time. This court earlier affirmed the findings of guilty and the sentence. However, we determined that the convening authority's action was ambiguous as to the period of suspension, and modified the action to comport with the language and intent of the pretrial agreement. *United States v. Hobdy*, No. 95–1161

(N.M.Ct.Crim.App. 21 September 1995). Based on allegations of the petitioner's subsequent illegal use of marijuana, the officer exercising special court-martial jurisdiction conducted a vacation hearing on 29 March 1996. He found sufficient evidence of a violation of the UCMJ to recommend that the suspended portion of the sentence be vacated. Based on the results of this hearing and the recommendation, the officer exercising general court-martial jurisdiction vacated the suspended portion of the petitioner's sentence in his order of 29 April 1996. As a result, the petitioner is now required to serve an additional 3 years, 11 months, of confinement.

 Citing two recent opinions of this court,[2] the petitioner filed a Supplemental Brief and Assignment of Errors on Behalf of Accused on 6 December 1996. We have determined that, since the appellate review of the case is final, the appropriate course of action was for him to file a Brief in Support of a Petition for Extraordinary Relief in the Nature of a Writ of Habeas Corpus. As the petitioner has requested, we will consider his pleading as if it were in that form.[3] Since vacation proceedings "are integral parts of a court-martial sentence," this court has the power to review the vacation of a suspended sentence. *United States v. Bingham*, 3 M.J. 119, 120 n. 2 (C.M.A.1977). This court has extraordinary writ jurisdiction to review assignments of error concerning a vacation hearing which results in a Sailor or Marine having to serve additional time in confinement. *United States v. Ward*, 5 M.J. 685, 686 (N.C.M.R.1978). *See* All Writs Act, 28 U.S.C. § 1651(a); *Dettinger v. United States*, 7 M.J. 216, 217–18 (C.M.A.1979). *Cf. Ross*, 43 M.J. at 771 (writ of error coram nobis).

---

**1.** Since the appeal of the findings and sentence of his general courtmartial has run its course, we will call Private Hobdy "petitioner" in this opinion, rather than "appellant" as he has chosen to do in his brief and assignments of error.

**2.** *Ross v. United States*, 43 M.J. 770, 771 (N.M.Ct. Crim.App.1995); *United States v. Saylor*, 40 M.J. 715, 717 (N.M.C.M.R.1994). The appellant also cited *United States v. May*, 49 C.M.R. 625, 626, 1974 WL 14130 (A.C.M.R.1974). Although each

case concerns jurisdiction over vacation hearings conducted under Art. 72(a), UCMJ, 10 U.S.C. § 872, none of them deal with the specific situation where normal appellate review has become final.

**3.** On 20 February 1997 the appellant filed a Motion to Expedite Appellate Review. This opinion renders that motion moot.

We have examined the record of the vacation hearing, the assignments of error,[4] and the Government's response thereto. We have concluded that the vacation hearing conducted on 29 March 1996 and the results thereof were correct in law and fact and that no error materially prejudicial to the substantial rights of the petitioner was committed.

## Assignment of Error I

 The petitioner first contends that the evidence before the hearing officer at his vacation hearing was insufficient to establish his guilt of the offense of using marijuana as alleged. Before vacation of a suspension of a general court-martial sentence may take place, "the officer having special courtmartial jurisdiction over the probationer shall personally hold a hearing on the alleged violation of the conditions of suspension." RULE FOR COURTS-MARTIAL 1109(D)(1)(A), MANUAL FOR COURTS-MARTIAL, UNITED STATES (1995 ED.) [hereinafter R.C.M.]. *See* Art. 72(a), UCMJ, 10 U.S.C. § 872(a). The probationer is entitled to various due process rights, including notice of the hearing and the alleged violation, legal representation, and the opportunity to present evidence and cross-examine the witnesses against him. R.C.M. 1109(d)(1)(B). *See United States v. Connell*, 42 M.J. 462, 464 (1995). If the hearing officer is convinced that the probationer committed the misconduct in question "by a preponderance of the evidence," *United States v. Englert*, 42 M.J. 827, 831 (N.M.Ct.Crim.App. 1995), he may recommend vacation of the suspension to the officer exercising general court-martial jurisdiction, who ultimately makes the decision whether or not to vacate the suspension. R.C.M. 1109(d)(2)(A).

 On the evening of 13 January 1996, the petitioner was playing horseshoes in the minimum security annex courtyard with three fellow prisoners. Private Bellerose, another prisoner who was lifting weights nearby, believed that he smelled the aroma of marijuana coming from their general area. He also noticed that the players would slip away, one at a time, to go behind a shed. Private Bellerose revealed this information to the authorities as an anonymous informant. He also testified at the vacation hearing. Special Agent (SA) Harris, NCIS, subsequently investigated the tip by interrogating the petitioner and each of the persons whom he was with. In addition, brig security personnel conducted a "shakedown," during which they discovered two suspicious plastic bags in one of the petitioner's boots. Two drug detection dogs, Mona and Blitz, each alerted on the bags (indicating that they detected the scent of one of five illegal drugs), although subsequent laboratory tests could identify no contraband residue within. These dogs, highly trained and regularly certified, had a commendable track record for accuracy, approaching 100 percent. Despite the petitioner's arguments to the contrary, we have no difficulty concluding that their alerting to the presence of the odor of a contraband substance in the baggies hidden in his boot was one of the "verified facts that show a violation of the UCMJ." *Englert*, 42 M.J. at 831; *United States v. Dupuis*, 10 M.J. 650, 655 (N.C.M.R.1980).

 Moreover, Private Rodriguez, one of the horseshoe players, admitted to SA Harris that he and the others had indeed been smoking marijuana that evening. He also stated that the petitioner had provided the marijuana joint they smoked. Other evidence indicated that the petitioner had sent nearly $500 to Jimmy Antley, a civilian friend and convicted drug user, who then visited him previous to the incident in question. The petitioner also admitted that, as a tractor driver, he could have gotten marijuana while outside the brig.

4. I. THE EVIDENCE WAS INSUFFICIENT TO ESTABLISH, BY A PREPONDERANCE OF THE EVIDENCE, THAT APPELLANT ENGAGED IN MISCONDUCT, AND THEREBY VIOLATED THE PROVISIONS OF HIS PRETRIAL AGREEMENT.

II. THE HEARING OFFICER IMPROPERLY CONSIDERED APPELLANT'S PRIOR COURT-MARTIAL CONVICTION AS EVIDENCE OF APPELLANT'S CHARACTER IN ORDER TO SHOW THAT THE ALLEGED DRUG USE WAS IN CONFORMITY THEREWITH. (Reference and citations omitted.)

III. THE HEARING OFFICER IMPROPERLY SHIFTED THE BURDEN OF PROOF TO APPELLANT TO DISPROVE THE ACCUSATIONS. (Reference and citations omitted.)

There was also evidence which tended to indicate that the petitioner had not used marijuana. No drugs or residue were ever found. During his testimony at the vacation hearing, Private Rodriguez recanted his earlier statement to SA Harris that he had used marijuana on the occasion in question. Moreover, urinalysis tests conducted 6 days after the incident on each of those involved all proved negative. In addition, the petitioner testified at the vacation hearing that he never possessed or used any marijuana while in confinement. Finally, we recognize, as did the hearing officer, that the petitioner was within 2 months of completing his period of confinement, had purchased a non-refundable plane ticket home, and had definite plans for a bright and productive future.

We have no doubt that this petitioner, an obviously bright and articulate man, recognized the grave risk of using illegal drugs in the brig. To employ the sentiment he used during his unsworn statement at his general court-martial regarding his involvement with drugs, his use of marijuana on 13 January 1996, therefore, would have been "stupid." Record at 41. But perhaps he thought, as he had admitted earlier, "that maybe I wouldn't get in trouble, or maybe I can get away with it." *Id.* He had not been sufficiently sensitive to his own advice: "But there's pretty much nothing you can do in your life that's wrong that you can get away with. Everything will come back to you, sir, and I know that now." *Id.* We note that this was the petitioner's third interaction with the authorities concerning his involvement with illegal drugs. His first "mistake" resulted in his being taken to mast on 19 August 1994 for use of methamphetamines. This infraction torpedoed his plans to become a Marine Corps officer. But that experience did not prevent him from repeating his mistake, first resulting in a 5–year, 11–month sentence of confinement at a general court-martial, and then the loss of the benefits of his pretrial agreement following this vacation hearing.

Based on the record before us, we believe the evidence was more than adequate to support the recommendation and decision to vacate the suspended portion of the petitioner's period of confinement adjudged at trial.

Therefore, this assignment of error is without merit.

### Assignment of Error II and III

In his next two summary assignments of error, the petitioner contends that it was improper for the hearing officer to consider his prior court-martial conviction and to shift the burden of proof to him to disprove the accusations.

■ "The Military Rules of Evidence [except for those dealing with privileges and evidence of the victim's past sexual behavior] shall not apply [to the vacation hearing]." R.C.M. 405(i), 1109(d)(1)(C). "Evidence may be considered [in a vacation hearing] that would not be admissible in an adversary criminal trial." *Dupuis,* 10 M.J. at 654 (citing *Morrissey v. Brewer,* 408 U.S. 471, 489, 92 S.Ct. 2593, 2604, 33 L.Ed.2d 484 (1972)). Therefore, consideration of the petitioner's prior criminal involvement with drugs was admissible to whatever extent the hearing officer believed it to be relevant.

We are unsure why the petitioner believes the hearing officer shifted the burden of disproving the allegations to him. Having reviewed the record carefully, we are confident that the burden of establishing a violation of the UCMJ, by a preponderance of the evidence, remained on the Government throughout this vacation hearing.

Therefore, both of these assignments of error are without merit.

### Conclusion

Accordingly, we deny the petitioner's petition for extraordinary relief.

Chief Judge DOMBROSKI and Judge LUCAS concur.