Donavon L. TAYLOR, Sergeant (E–5),
U.S. Marine Corps, Petitioner,

v.

John V. GARAFFA, Captain, JAGC, USN,
Military Judge, Respondent.

NMCM 200201419.

U.S. Navy–Marine Corps Court
of Criminal Appeals.

11 Sept. 2002.

LT Colin A. Kisor, JAGC, USNR, Appellate Defense Counsel.

LT Marcus N. Fulton, JAGC, USNR, Appellate Defense Counsel.

LT Stacia J. Gawronski, JAGC, USNR, Detailed Defense Counsel.

LT Keith B. Lofland, JAGC, USNR, Asst. Detailed Defense Counsel.

LT Frank L. Gatto, JAGC, USNR, Counsel for Respondent.

Before OLIVER, VILLEMEZ, and FINNIE, Appellate Military Judges.

OLIVER, Senior Judge:

Petitioner has submitted a petition for extraordinary relief in the nature of a writ of mandamus. He contends that the Respondent military judge improperly denied his motion to limit the jurisdiction of his special court-martial to impose punishment. Since he allegedly committed the charged offense prior to 15 May 2002, he claims that RULE FOR COURTS-MARTIAL 201(f)(2)(B)(i), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2000 ed.), as that rule existed prior to the 2002 Amendments to the MANUAL FOR COURTS-MARTIAL, UNITED STATES, as prescribed by Exec. Order No. 13262, 3 C.F.R. Executive Order 13262 (Apr. 11, 2002)[hereinafter Executive Order], sets the appropriate jurisdictional limits. He requests an order from this Court directing that Respondent, the military judge detailed to Petitioner's special court-martial, grant Petitioner's motion to limit the maximum punishment to that which existed prior to 15 May 2002. After careful consideration of the excellent briefs prepared on short notice by counsel for both parties, we find that Petitioner has failed to establish that he is entitled to an extraordinary writ restricting the jurisdiction of his special-court martial in this manner.

## I. JURISDICTION

Both parties agree that this Court has jurisdiction to consider and, if it deems appropriate, issue an extraordinary writ in this case in the nature of a writ of mandamus under the All Writs Act, 28 U.S.C. § 1651(a). *Ponder v. Stone,* 54 M.J. 613, 615 (N.M.Ct. Crim.App.2000). Because this Court is the highest judicial tribunal within the Department of the Navy, this writ authority is in aid of its mandate to supervise the administration of courts-martial within the Navy and Marine Corps. *See United States v. Curtin,* 44 M.J. 439, 440 (1996); *Dettinger v. United States,* 7 M.J. 216, 219–20 (C.M.A.1979); *Hobdy v. United States,* 46 M.J. 653, 654 (N.M.Ct.Crim.App.1997); *Aviz v. Carver,* 36 M.J. 1026, 1028 (N.M.C.M.R.1993). This Court, therefore, has jurisdiction to consider the merits of this petition.

## II. SUMMARY OF THE FACTS

Both parties also agree on all the relevant facts. On 30 April 2002, Petitioner provided a urine specimen as part of a command-directed urinalysis-screening test. His command received a naval message on 14 May 2002 informing it that Petitioner had tested positive for cocaine. On 28 May 2002, the convening authority convened a special court-martial, preferred a single charge and specification for wrongful use of cocaine against Petitioner, and referred that charge for trial.

On 11 April 2002, President George W. Bush signed Executive Order 13262. Among other things, this Executive Order amended R.C.M. 201(f)(2)(B)(i) to allow special courts-martial to adjudge confinement for not more than 1 year and forfeiture of two-thirds pay per month for not more than 1 year.[1] Prior to that amendment, R.C.M. 201(f)(2)(B)(i)

---

1. Section 3a of the Executive Order provides:
   a. R.C.M. 201(f)(2)(B)(i) is amended to read as follows:
   (1) Upon a finding of guilty, special courts-martial may adjudge, under limitations prescribed by this Manual, any punishment autho- rized under R.C.M. 1003 except death, dishonorable discharge, dismissal, confinement for more than 1 year, hard labor without confinement for more than 3 months, forfeiture of pay exceeding two-thirds pay per month, or any forfeiture of pay for more than 1 year.

limited both of these punishments to a maximum of 6 months. To assist Navy and Marine Corps practitioners in applying this amendment, on 14 May 2002 the Judge Advocate General of the Navy promulgated guidance on the issue, stating that the increase in jurisdictional maximums of confinement and forfeitures at special courts-martial should apply only in those cases "in which the accused is convicted of an offense ***committed* on or after 15 May 2002.**" JAG memo of 14 May 2002. The memorandum noted that he had coordinated this guidance with the Staff Judge Advocate to the Commandant of the Marine Corps.

Petitioner was arraigned on the Charge and Specification on 22 July 2002. Immediately after arraignment, Petitioner filed a motion to limit the court's maximum punishment provided under R.C.M. 201(f)(2)(B)(i) to the maximum in effect prior to the amendment. In this motion, Petitioner argued that he was alleged to have committed the offense prior to the effective date of the amendment in the Executive Order. Respondent denied Petitioner's motion, ruling that R.C.M. 201(f)(2)(B)(i), as amended by the Executive Order, provided the appropriate limitations on punishment for any special court-martial convened after 15 May 2002. The petition for extraordinary relief followed immediately on 22 July 2002.

On that same day and in response to the petition, this Court issued an order staying the proceedings, requesting that the Judge Advocate General assign counsel to represent Respondent, and directing that Respondent show cause as to why the petition should not be granted. Respondent's counsel entered an appearance and filed a response on Respondent's behalf on 1 August 2002. This Court denied Respondent's subsequent request for oral argument.

### III. STANDARD OF REVIEW

■ In reviewing Petitioner's claim, we begin with the premise that "a Writ of Mandamus is a drastic remedy that should be used only in truly extraordinary situations."

*Aviz*, 36 M.J. at 1028. It is generally disfavored, because it disrupts the orderly process of appellate review that occurs only after the completion of a court-martial proceeding in which an accused has been convicted and sentenced. *McKinney v. Jarvis*, 46 M.J. 870, 873–74 (Army Ct.Crim.App.1997). For that reason, "the petitioner bears the burden of demonstrating that he is entitled to [the extraordinary relief] as a clear and indisputable right." *Aviz*, 36 M.J. at 1028; *accord Will v. Calvert Fire Insurance Co.*, 437 U.S. 655, 662, 98 S.Ct. 2552, 57 L.Ed.2d 504 (1978); *Ross v. United States*, 43 M.J. 770, 771 (N.M.Ct.Crim.App.1995); *United States v. Thomas*, 33 M.J. 768, 770 (N.M.C.M.R.1991). With these principles in mind, we turn to a discussion of Petitioner's legal arguments.

### IV. DISCUSSION

In his brief, Petitioner makes three separate legal arguments as to why he is entitled to relief: (1) that Respondent violated the language of the Executive Order; (2) that Respondent violated the guidance the Judge Advocate General of the Navy issued for use in applying it; and (3) that the 2002 Amendments, increasing the jurisdictional maximum of the special court-martial, if applied to the special circumstances in Petitioner's case, would constitute an *Ex Post Facto* law in violation of the U.S. Constitution.[2]

### Violation of Executive Order

■ Petitioner first contends that Respondent violated the language of the President's Executive Order. We disagree.

Congress set the jurisdiction of a special court-martial in Article 19, UCMJ, 10 USC § 819, when it amended that Article to allow a special court-martial to adjudge confinement and forfeiture of pay for up to 1 year. P.L. No. 106–65, Div. A, Title V, Subtitle J, § 577(a). That amendment was signed into law on 5 October 1999 and became effective on 1 April 2000. Pub.L. No. 106–65, Div. A, Title V, Subtitle J, § 577(b), 113 Stat. 625 (codified at 10 U.S.C. § 819)(Oct. 5, 1999)(noting that these amendments "shall

---

2. In his petition, Petitioner combined the first two of these into one basis for relief. We have

separated them for ease and clarity of analysis.

take effect on the first day of the sixth month beginning after the date of the enactment of this Act and shall apply with respect to charges referred on or after that effective date to trial by special courts-martial." *Id.*). Thus, there is nothing in the statutory framework that bars a special court-martial from imposing the increased jurisdictional maximums.

However, Congress gave the President authority to prescribe any limitations on the maximum punishments that the statutes may authorize. Prior to the Executive Order, R.C.M. 201(f)(2)(B)(i) limited the maximum-punishment jurisdiction. Therefore, until Executive Order 13262 became effective, the maximum punishment permissible at a special court-martial remained at 6 months, because it provided greater individual protections than Article 19, UCMJ.

Respondent military judge was bound to apply the provisions of this Executive Order with regard to the court-martial to which he was detailed, particularly to the extent that it provides rules granting an accused greater rights or greater protections than those that Congress may have provided. *See United States v. Davis,* 47 M.J. 484, 486 (1998). Quoting section 6e of the Executive Order, Petitioner contends that this language "explicitly affixes the scope of [his] procedural rights ...." and that, as a result, he is entitled to the earlier maximum limits on punishment. Petitioner's Brief of 22 Jul 2002 at 7.

Section 6e of the Executive Order provides that "[n]othing in these amendments shall be construed to invalidate any nonjudicial punishment proceeding, restraint, investigation, referral of charges, trial in which arraignment occurred, or other action begun prior to May 15, 2002," and that any such action "may proceed in the same manner and with the same effect as if these amendments had not been prescribed." Petitioner interprets the word "may" as meaning the same thing as "shall" or "must," interprets "other action" as including the urinalysis testing and reporting procedures, and concludes that, since the urinalysis and the alleged offense took place prior to 15 May, he is entitled to the earlier restrictions on punishment. We are unpersuaded by Petitioner's strained textual parsing.

The clear intent of section 6e is to enable preexisting military justice procedures to continue or remain unaffected by the 2002 Amendments. It is the final provision of the Executive Order, placed immediately before the President's signature. It is obviously merely a "savings clause," nothing more.

The more applicable provision of the Executive Order is the lead-in sentence to section 6, which states simply: "These amendments shall take effect on May 15, 2002." Exec. Order 13262, 67 Fed.Reg. at 18779. Other specific provisions of section 6 include that certain amendments "shall only apply" as follows: "in cases in which arraignment has been completed on or after May 15, 2002." Executive Order, §§ 6a, 6c; and, "to offenses committed after November 18, 1997." *Id.* § 6b. Moreover, it specifies that: "Nothing in these amendments shall be construed to make punishable any act done or omitted prior to May 15, 2002, that was not punishable when done or omitted." *Id.* § 6d. A more appropriate reading of the Executive Order, therefore, is that, the date that the Amendment in question became effective, finally effectuating Congress' intent in its 1999 amendment to Article 19, was 15 May 2002.

We are also unpersuaded by Petitioner's argument that his case originated as an "action" prior to 15 May 2002. Under longstanding principles of military law, the proceeding against Petitioner did not begin until the convening authority convened the court-martial and referred his case to it. 1 F. GILLIGAN & F. LEDERER, COURT–MARTIAL PROCEDURE 512 (2d ed.1999). The urinalysis test process and the message reporting it to be positive were not "actions" within the meaning of § 6e of the Executive Order. Since Petitioner's court-martial was convened and his case was referred to it after 15 May 2002, under the terms of the Executive Order, the maximum punishment with respect to his special court-martial is R.C.M. 201(f)(2)(B)(i) as amended.

Moreover, even if Petitioner's urinalysis and the testing procedure that followed were "actions" contemplated by the Executive Or-

der, those actions began and were completed before 15 May 2002. Under the "savings clause" provision of the Executive Order, the amendments do not affect these "actions" and they need not be redone or revisited because of the Executive Order.

Finally, while Petitioner does not address the issue, we note that the Executive Order also provides that the maximum punishment for offenses committed prior to 15 May 2002 shall not exceed the applicable maximum in effect at the time of the commission of such offense. Executive Order, ¶ 6b. In this case, the Government has charged Petitioner with the wrongful use of cocaine on or about 8 May 2002, in violation of Article 112a, UCMJ, 10 USC § 912a. Charge Sheet. The maximum punishment for a violation of Article 112a, both before and after the promulgation of this Executive Order, was a dishonorable discharge, confinement for a period of 5 years, forfeiture of all pay and allowances, and reduction to the lowest enlisted pay grade. MCM, Part IV, ¶ 37e(1)(a). The Executive Order did not change this statutory maximum punishment.

We conclude, therefore, that with respect to a special court-martial **convened after 15 May 2002** (and that meets the other requirements of Article 19, UCMJ), the President has authorized such a special court-martial to adjudge the increased penalties that Congress enacted in October, 1999, and that the President promulgated in April, 2002.

### Violation of Guidance from the Judge Advocate General

■ Petitioner next argues that Respondent violated published guidance on this point from the Judge Advocate General of the Navy. The Judge Advocate General of the Navy promulgated a memorandum advising all Navy and Marine Corps judge advocates that the increase in jurisdictional maximums of confinement and forfeitures at special courts-martial should apply only in those cases in which the accused is convicted of **an offense committed on or after 15 May 2002**. JAG memo of 14 May 2002 at ¶ 1. This was done for the purpose of promoting "consistency and fairness in the application of this R.C.M." *Id.* The Navy JAG opined that, since it is "unclear whether

application of this rule to a special courts-martial in which all the offenses of which the accused is convicted occurred prior to 15 May 2002 would constitute a violation of the *ex post facto* clause of the United States Constitution, ... the interests of military justice are best served by the prospective application of R.C.M. 201(f)(2)(B)." *Id.* ¶ 2.

Petitioner contends that the military judge and the trial court's jurisdiction are bound by the strictures of this "guidance." However, the language of the memorandum is not addressed to military judges, does not purport to be directive, and does not support a jurisdictional challenge. In fact, it specifically states: "[T]his guidance does not create an enforceable right on behalf of any accused." *Id.* ¶ 4. Therefore, Petitioner cannot base his claim for relief on the guidance contained in this memorandum.

In any case, a military judge is obliged to apply the law to the best of his or her ability to cases and controversies that come before him or her. In determining what the law is, the military judge is a completely independent entity from his military superiors. Our superior Court has strongly rejected any actions by the Judge Advocate General, or any of his subordinates, that might interfere with the independent decision-making authority and discretion of a military judge. *United States v. Mabe*, 33 M.J. 200, 205 (C.M.A. 1991). "We unequivocally reject this admittedly 'personal' view of the military justice system and its concomitant undermining of the independence of the military judge. It improperly reduces the court-martial judge, already without tenure, to the status of a mere alter-ego of the Judge Advocate General or his designee." *Id.* We are completely confident that the Navy JAG was in no way trying to interfere with the independence of military judges in the Navy and Marine Corps by issuing his memorandum of 14 May 2002. Far from it. But, if we were to adopt Petitioner's reasoning, this might be the result in future cases of this kind.

Since this guidance from the Judge Advocate General is not binding on Respondent and creates no enforceable right in any accused, Responded did not "violate" it and

Petitioner has no basis in law to the remedy that he seeks based on any such "violation."

### Violation of the *Ex Post Facto* Clause

Finally, Petitioner gets to the issue at the heart of the matter. He contends that the application of the increased jurisdictional maximums in his case would violate the *Ex Post Facto* Clause of the U.S. Constitution.

The U.S. Constitution provides: "No Bill of Attainder or ex post facto Law shall be passed." U.S. CONST. art. I, § 9, cl. 3. As early opinions of the U.S. Supreme Court explained, an *"ex post facto* law" was a term of art with an established meaning at the time of the framing of the Constitution. *See Calder v. Bull,* 3 U.S. (3 Dall.) 386, 1 L.Ed. 648 (1798). Justice Chase's familiar opinion in *Calder* expounded those legislative acts that implicated the core concern of the *Ex Post Facto* Clause:

> 1st. Every law that makes an action done before the passing of the law, and which was *innocent* when done, criminal; and punishes such action. 2d. Every law that *aggravates* a *crime,* or makes it *greater* than it was, when committed. 3d. Every law that *changes the punishment,* and inflicts a *greater punishment,* than the law annexed to the crime, when committed. 4th. Every law that alters the *legal* rules of *evidence,* and receives less, or different, testimony, than the law required at the time of the commission of the offence, *in order to convict the offender.*

*Id.* at 390. Petitioner contends that both the third and fourth categories are implicated in his case. We will consider the applicability of each of these two categories in turn.

### Third Category—Greater Punishment

■ In the early part of the 20th Century the Supreme Court summarized the primary thrust of the *Ex Post Facto* Clause as follows: "It is settled, by decisions of this Court so well known that their citation may be dispensed with, that any statute which … makes more burdensome the punishment for a crime, after its commission … is prohibited as *ex post facto."* *Beazell v. Ohio,* 269 U.S. 167, 169–70, 46 S.Ct. 68, 70 L.Ed. 216 (1925). "[T]he Clause is aimed at laws that 'retroactively alter the definition of crimes or increase the punishment for criminal acts.' " *California Dept. of Corrections v. Morales,* 514 U.S. 499, 504, 115 S.Ct. 1597, 131 L.Ed.2d 588 (1995)(quoting *Collins v. Youngblood,* 497 U.S. 37, 43, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990)).

Petitioner contends that the Executive Order makes the punishment of the crime of which he is accused more burdensome a week or so after he was alleged to have committed it. "In the case at hand, the accused allegedly committed a crime before 15 May 2002, yet will face up to six additional months in confinement, and be subject to the possibility of automatic forfeitures even if no punitive discharge is adjudged, solely due to the fact that the court was convened after 15 May 2002." Brief in Support of Petition for Extraordinary Relief in the Nature of a Writ of Mandamus of 22 Jul 2002 at 13.

Petitioner quotes a recent decision of our superior Court in support of his argument: " '[I]t is the effect, not the form, of the law that' makes it *ex post facto* and that legislation must 'give fair warning' of its effect so that people can rely on the law's meaning." *United States v. Gorski,* 47 M.J. 370, 373 (1997) (quoting *Weaver v. Graham,* 450 U.S. 24, 28, 31, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981)). In *Gorski* the Court concluded that the increased forfeiture provisions of Articles 57a and 58b, UCMJ, 10 USC §§ 857a and 858b, constituted an *Ex Post Facto* law in violation of the U.S. Constitution. *Gorski,* 47 M.J. at 375.

While we have carefully reviewed Petitioner's arguments in this regard, considered Respondent's written ruling and appellate briefs, and studied the opinions that we considered relevant, specifically including *Gorski,* we conclude that the application of the Executive Order in this case would not violate the enhanced-punishment prohibition in the Constitution's *Ex Post Facto* Clause.

At the time Petitioner allegedly committed this offense, the maximum punishment for a violation of Article 112a, UCMJ, was a dishonorable discharge, confinement for a period of 5 years, forfeiture of all pay and allowances, and reduction to the lowest enlisted pay grade. MCM, Part IV, ¶ 37e(1)(a).

Likewise, in 1999 Congress specified that the maximum punishment at a special court-martial was confinement of 1 year and forfeiture of two-thirds pay per month for 1 year. The Executive Order did not change these potential punishments. It merely increased the jurisdictional maximum punishment a special court-martial may adjudge to the limits Congress had authorized in 1999. Unlike in *Gorski*, Petitioner was subject to all these punitive consequences of his actions prior to 15 May 2002.

Of course, the only forum in which the maximum punishment for this offense might be adjudged is at a general court-martial. If the convening authority were to determine that a special court-martial did not have jurisdiction to impose an adequate sentence under the circumstances of the case presented to him, his only alternative would be to direct a pretrial investigation and, if appropriate, forward the report of investigation to a superior commander for disposition. R.C.M. 405(b)(5); *see* Art. 32, UCMJ. This process provides an accused with several additional rights, not the least of which is that a different, superior commander will determine the ultimate disposition of his case. Thus, just as an accused has no right to resolution of his case at a special court-martial, the special court-martial convening authority has no right to have it resolved at a general court-martial.

There are also several other procedural rights that an accused enjoys prior to a case going to, during, or after a general court-martial. *See* Arts. 16, 32, 33, and 34, UCMJ, 10 USC §§ 816, 832, 833, and 834; *see also* R.C.M. 405(f). We are not unmindful of the rights that Petitioner would have enjoyed prior to 15 May 2002 that the military judge determined he no longer enjoys after that date if the Government intended to pursue a punishment in excess of 6 months of confinement.

We nonetheless conclude that protections of the *Ex Post Facto* Clause do not extend that far to incorporate procedural protections unrelated to punishment. The Supreme Court has established that legislated changes in criminal procedures that do not make criminal conduct that was previously inno-

cent, aggravate the criminality of the conduct, enhance the punishment, or alter the legal rules of evidence to the accused's disadvantage do not violate the *Ex Post Facto* Clause. *See Collins*, 497 U.S. at 52, 110 S.Ct. 2715. In a case from a century earlier, the Supreme Court had opined:

> It may be said, generally speaking, that *an ex post facto* law is one which imposes a punishment for an act which was not punishable at the time it was committed; or an additional punishment to that then prescribed ... but the prescribing of different modes of procedure and the abolition of courts and creation of new ones, leaving untouched all the substantial protections with which the existing law surrounds the person accused of crime, are not considered within the constitutional inhibition.

*Duncan v. Missouri*, 152 U.S. 377, 382–83, 14 S.Ct. 570, 38 L.Ed. 485 (1894). If the creation of a new forum in which to try an offense does not violate the *Ex Post Facto* Clause, the mere alteration of an inferior court's maximum jurisdiction cannot constitute such a violation.

Moreover, in more recent years the Supreme Court has repeatedly insisted that the "substantial protections" language in the *Duncan* decision does not extend to procedural changes such as the ones implicated in the present case. The fact is that Petitioner faced potential maximum punishments far in excess of what he is now facing at a special court-martial well before the moment he allegedly used cocaine. We are confident that the increased procedural requirements that the Government would have had to satisfy had Petitioner's case been referred to a general court-martial are not the kind of substantive change that would implicate the *Ex Post Facto* Clause. The Executive Order simply did not enhance the punishments for this offense such that it would be unconstitutional to subject Petitioner to them.

### Fourth Category—Alteration of Legal Rules of Evidence

■ Although Respondent, in his initial ruling, and his counsel on appeal, have assumed that Petitioner is arguing only the third category of the *Calder* factors, Petitioner, in his Supplemental Reply to Respon-

dent's Answer, now argues another basis. Citing Carmell v. Texas, 529 U.S. 513, 120 S.Ct. 1620, 146 L.Ed.2d 577 (2000), Petitioner contends that evidentiary or other procedural changes which might make conviction of an accused more likely fall into the fourth category of Ex Post Facto laws enunciated in Calder v. Bull. Petitioner contends that procedural changes which aid only the Government have the effect of lowering the quantum of proof necessary to obtain a conviction, because the increased coercive pressure now available to the Government might induce a defendant to plead guilty to a lesser crime. See Carmell, 529 U.S. at 546, 120 S.Ct. 1620.

Petitioner maintains that the Supreme Court's decisions have not limited the scope of the Ex Post Facto Clause to the four finite Calder categories, but have stated more broadly that retroactive legislation contravenes Art. I, § 9, if it deprives an accused of a "substantial protection" under law existing at the time of the crime. He argues that the lower previous jurisdictional limits at a special court-martial, and the procedural protections prior to taking the case to a general court-martial, constitute such "substantial protections."

Petitioner is reading the fourth category of the Calder opinion, and the Ex Post Facto Clause itself, too broadly. Indeed, in its 5–4 decision in Carmell, the Supreme Court was dealing with a specific evidentiary change to the law used to convict the Petitioner. The majority emphasized the continued viability of the fourth Calder category, a proposition that Collins had left in some doubt. Carmell, 529 U.S. at 538–39, 120 S.Ct. 1620 ("Collins held that is was a mistake to stray beyond Calder's four categories, not that the fourth category itself was mistaken." Id. at 539, 120 S.Ct. 1620).

As recently as 1990 the Supreme Court reminded us that "[s]ubtle ex post facto violations are no more permissible than overt ones." Collins, 497 U.S. at 46, 110 S.Ct.

2715. However, in Collins the Court noted that in order to be a violation of the prohibition against Ex Post Facto laws, it must fit squarely within one or more of the four defined Calder categories. Id. ("The references in Duncan and Malloy to 'substantial protections' and 'personal rights' should not be read to adopt without explanation an undefined enlargement of the Ex Post Facto Clause.") The Collins court also approved the language in Beazell that noted that the provision was "not to limit the legislative control of remedies and modes of procedure which do not affect matters of substance." Collins, 497 U.S. at 46, 110 S.Ct. 2715 (quoting Beazell, 269 U.S. at 171, 46 S.Ct. 68).[3]

Petitioner struggles mightily to fit the facts of his case into the fourth Calder category proscribing Ex Post Facto evidentiary changes. However, the Executive Order with respect to the legislated jurisdictional change before us has nothing to do with any evidentiary changes. And even if Petitioner could convince us that these could constitute a change reducing the Government's evidentiary burden, he fails to persuade us that they are anything more than procedural. These new provisions are not those "arbitrary," "cruel," "unjust," or "oppressive" changes to the legal structure that the Constitution condemns. See Malloy, 237 U.S. at 183, 35 S.Ct. 507 (noting that the Ex Post Facto Clause was "intended to secure substantial personal rights against arbitrary and oppressive legislative action"); Beazell, 269 U.S. at 170, 46 S.Ct. 68.

To establish its case against Petitioner, the Government must prove all of the elements that it would have had to prove prior to 15 May 2002. The burden of proof is unchanged. Petitioner is entitled to assert all of the possible defenses he had previously. The maximum punishment scheme remains the same. And the rules of evidence are all unchanged. See Carmell, 529 U.S. at 543–44, 120 S.Ct. 1620 (quoting Hopt v. Territory of Utah, 110 U.S. 574, 589–90, 4 S.Ct. 202, 28

---

**3.** In his Supplemental Reply to Respondent's Answer, in which he attempts to develop the applicability of the fourth Calder factor, Petitioner asks that we compare the Supreme Court decisions in Kring v. Missouri, 107 U.S. 221, 2 S.Ct. 443, 27 L.Ed. 506 (1883), and Thompson v. Utah, 170 U.S. 343, 18 S.Ct. 620, 42 L.Ed. 1061 (1898), with Collins. However, after analyzing the facts

and holdings of these earlier cases, Collins specifically **overruled** the much earlier Kring and Thompson decisions! This was on the basis that the mere implication of "substantial protections and personal rights," without directly fitting into any of the four substantive Calder categories, would not violate the Ex Post Facto Clause. Collins, 497 U.S. at 47–52, 110 S.Ct. 2715.

L.Ed. 262 (1884)). The possibility that Petitioner would now be more willing to enter into a plea bargain, and thus reduce the Government's evidentiary burden by pleading guilty, because Petitioner is now subject at a special court-martial to greater potential punishment, is simply too speculative a logical chain to implicate an *Ex Post Facto* issue. *See Morales,* 514 U.S. at 514, 115 S.Ct. 1597 (concluding that the "legislation at issue creates only the most speculative and attenuated risk," and thus does not violate the *Ex Post Facto* Clause). As a result, the application of the Executive Order to cases referred to special courts-martial after 15 May 2002 does not constitute a violation of the *Ex Post Facto* Clause.

Although we have concluded that there is clearly no violation of the Constitution's *Ex Post Facto* Clause on these facts, we also emphasize that, even if the issue were considerably closer, we would still rule in Respondent's favor. In order to prevail on a motion for extraordinary relief, "[P]etitioner bears the burden of demonstrating that he is entitled to it as a clear and indisputable right." *Aviz,* 36 M.J. at 1028. He has simply not done so in this case. The President's Executive Order "does not punish as a crime an act previously committed, which was innocent when done; nor make more burdensome the punishment for a crime, after its commission; nor deprive one charged with crime of any defense available according to law at the time when the act was committed." *Collins,* 497 U.S. at 52, 110 S.Ct. 2715. Therefore, the *Ex Post Facto* Clause of Art. I, § 9, U.S. Constitution, as interpreted in a long line of Supreme Court decisions, does not prohibit applying the Executive Order to Petitioner as was done in this case.

### Decision

Accordingly, we hereby deny Petitioner's request for extraordinary relief. We also lift the stay on the proceedings below that we imposed on 22 July 2002.

Senior Judge FINNIE and Judge VILLEMEZ concur.