**40**

**UNITED STATES, Appellee,**

v.

**Albert E. THOMPSON, Technical Sergeant, U.S. Air Force, Appellant.**

No. 49,668.

ACM 24105.

U.S. Court of Military Appeals.

April 14, 1986.

For Appellant: *Major William H. Lamb* (argued); *Colonel Leo L. Sergi* (on brief).

For Appellee: *Major David F. Barton* (argued); *Colonel Kenneth R. Rengert* and *Lieutenant Colonel Donal F. Hartman, Jr.* (on brief); *Major Robert E. Ferencik, Jr.* and *Captain Brenda J. Hollis.*

*Opinion of the Court*

COX, Judge:

Appellant was tried by general court-martial at Minot Air Force Base, North Dakota, on 1, 2 and 3 July, 1983. Contrary to his pleas, he was convicted by a panel of officer members of conspiracy to distribute marihuana; dereliction of duty; and use, possession, and distribution of marihuana, in violation of Articles 81, 92, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 881, 892, and 934, respectively. His sentence to confinement for 1 year, reduction to E–1, and a bad-conduct discharge was approved by the convening authority and affirmed by the Court of Military Review.

We granted review of the following issue:

WHETHER THE EVIDENCE IS INSUFFICIENT AS A MATTER OF LAW TO SUPPORT A CONVICTION UNDER CHARGE III AND ITS SPECIFICATION ALLEGING A VIOLATION OF ARTICLE 92, UNIFORM CODE OF MILITARY JUSTICE, 10 U.S.C. § 892, IN THAT APPELLANT ALLEGEDLY FAILED TO PREVENT THE USE OF MARIHUANA, SINCE THE PROSECUTION FAILED TO PROVE THE EXISTENCE OF A DUTY ON THE PART OF A NONCOMMISSIONED OFFICER TO PREVENT MARIHUANA USE.

■ Appellant, a Technical Sergeant, was convicted of dereliction of duty for failing to prevent Airman First Class Johnnie L. Smith from wrongfully using marihuana, "as it was in his duty to do by virtue of his position as a noncommissioned officer in the United States Air Force"

(specification of Charge III). Appellant was also convicted of using marihuana at the same time and place with Airman Smith. Because it is inconsistent to convict appellant of dereliction of duty for failing to prevent the same crime to which he was a principal, we will dismiss the dereliction of duty offense. *United States v. Heyward,* 22 M.J. 35 (C.M.A.1986); *United States v. Marks,* 11 M.J. 303 (C.M.A.1981).

Although we need not decide the granted issue, we take this opportunity to express doubts concerning whether the Government established a clear-cut duty on the part of appellant as a noncommissioned officer to prevent crime. The Government attempted to prove that appellant had a duty to prevent marihuana use by introducing evidence of Air Force programs and policies to eliminate drug abuse. In addition, appellant's commander opined that the duty to prevent crime is inherent in the rank of noncommissioned officer. The Government was unable, however, to point to a specific regulation, directive or custom of the service which would require a noncommissioned officer to "prevent" drug abuse.

It is well-recognized that the special status held by officers requires "certain standards of conduct ... which are understood by them and which exceed the standards that apply to civilians." *See United States v. Johanns,* 20 M.J. 155, 162 (C.M.A.) (separate opinion of Cox, J.), *cert denied,* —— U.S. ——, 106 S.Ct. 147, 88 L.Ed.2d 122 (1985). *See also Parker v. Levy,* 417 U.S. 733, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974). So, too, noncommissioned officers, by virtue of their rank and authority, have certain leadership responsibilities required of them by law and custom. On appeal, the Government has contended that noncommissioned officers of the Air Force can be charged with dereliction of duty if they stand idly by and take no action to prevent drug abuse occurring in their presence.

We agree with the basic premise that noncommissioned officers have the responsibility to maintain high personal standards of conduct and to counsel and correct their subordinates on deficiencies. Indeed, any noncommissioned officer worth his salt would not hesitate to take affirmative action to stop the use of drugs, to break up fights, to halt a thief, or to take reasonable measures to "prevent" crime, in any shape or form. Nevertheless, in the absence of an identifiable regulation, directive, or custom of the service which would provide notice to noncommissioned officers of the *legal* requirements to which they are subject, we are reluctant to approve criminal sanctions under Article 92(3) for failure to perform a general unspecified duty to "prevent" crime.

In the context of dereliction of duty, what does the duty to prevent crime entail? Would an order by a noncommissioned officer to cease and desist be sufficient? Must the noncommissioned officer apprehend the suspect? What degree of force may a noncommissioned officer employ to prevent a crime? *See Tennessee v. Garner,* 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985). Does the duty extend to misconduct observed by a noncommissioned officer off-post as well as on-post? Explicit directives defining responsibilities in this regard would be advisable if the Air Force desires to subject its noncommissioned officers to criminal liability for failure to "prevent" drug abuse or any other crime.*

In any event, when a noncommissioned officer is himself a principal to the criminal activity that he fails to report or prevent, he cannot be convicted of both dereliction of duty and the substantive crime. Of course, that appellant's use of marihuana occurred in the presence of a junior servicemember would be an aggravating circumstance of the use offense and a proper consideration for the sentencing authority. *See United States v. Sargent,* 18 M.J. 331,

---

* Unless noncommissioned officers are given adequate training in law enforcement, it is possible to visualize how their efforts to prevent crime in some situations may have the unintended result of actually impeding the military justice system.

339 (C.M.A.1984); *United States v. Vickers,* 13 M.J. 403 (C.M.A.1982).

The decision of the United States Air Force Court of Military Review is reversed as to Charge III and its specification and the sentence. The findings of guilty thereon are set aside and that Charge and its specification are dismissed. The record of trial is returned to the Judge Advocate General of the Air Force for submission to that court for reassessment of the sentence based on the remaining findings of guilty.

Chief Judge EVERETT concurs.