UNITED STATES

v.

**Whitman D. WALLACE, Sergeant (E-5), U.S. Marine Corps.**

**NMCM 200001148.**

U.S. Navy–Marine Corps Court of Criminal Appeals.

Sentence Adjudged 24 Sept. 1999.

Decided 22 May 2003.

Maj Charles C. Hale, USMC, Appellate Defense Counsel.

LT C.C. Burris, JAGC, USNR, Appellate Government Counsel.

Before OLIVER, Chief Judge, VILLEMEZ, and HARRIS, Appellate Military Judges.

HARRIS, Judge:

Appellant was tried on 3 August and 23–24 September 1999 by a general court-martial composed of a military judge alone. In accordance with his pleas, Appellant was found guilty of unpremeditated murder, kidnapping, and obstruction of justice, in violation of Articles 118(2) and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 918(2) and 934. Appellant was sentenced to confinement for life without eligibility for parole, forfeiture of all pay and allowances, reduction to pay grade E–1, and a dishonorable discharge. On 11 July 2000, the convening authority (CA) approved the sentence as adjudged and, except for the dishonorable discharge, ordered it executed. Pursuant to a pretrial agreement, the CA suspended all confinement in excess of 30 years for the period of confinement to be served plus 12 months thereafter.

After carefully considering the record of trial, Appellant's nine assignments of error, Appellant's Motion to Correct Errata, Appellant's Motion to Attach Documents, the Government's Answer, and the Government's Motion to Attach Documents in response to this Court's order to produce documents, we conclude that the findings and sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of Appellant was committed. *See* Arts. 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a) and 866(c).

### Statement of Facts

Appellant and his wife had a 3–year–old daughter and were having marital problems. Appellant had been served with a military protective order (MPO) to stay away from his wife. While living apart, Appellant's wife stopped by Appellant's barracks room on 26 March 1999 so that Appellant could have visitation with their daughter. Prosecution

Exhibit 1 (Written Proffer of the Accused). Some time during the visit Appellant and his wife engaged in sexual intercourse while their daughter was asleep. Afterwards, Appellant and his wife got into an argument over support. Appellant alleged that she threatened to accuse him of rape. Appellant struck her, knocking her to the floor. Appellant then repeatedly slammed his wife's head on the floor. These blows ultimately resulted in her death.

Appellant was advised by his trial defense counsel that the maximum punishment in his case included life without possibility of parole. Appellant's Motion to Attach Documents of 3 Jul 2002 (Declaration of Lieutenant Colonel John M. Schum, U.S. Marine Corps, of 2 Jul 2002). Appellant entered into his pretrial agreement with the belief that this statement by his counsel was correct. Appellant's Motion to Attach Documents of 3 Jul 2002 (undated Declaration of Appellant). At trial, the military judge confirmed trial defense counsel's advice and also advised Appellant that life without possibility of parole was the maximum punishment. After a comprehensive providence inquiry, the military judge accepted Appellant's plea to unpremeditated murder and the other offenses.

The testimony and evidence in sentencing established that Appellant was a polite and normally gentlemanly man, who cared about his daughter. *See* Defense Exhibits B–E. Appellant had served honorably in the U.S. Army. The staff judge advocate's recommendation (SJAR) did not specifically acknowledge this honorable service and only lists the dates that Appellant had served in the Army. SJAR of 28 Mar 2000 at 3.

### Life Without Possibility of Parole as an Authorized Punishment

■ In Appellant's first assignment of error, he asserts that because life without possibility of parole was not an authorized punishment under the UCMJ in September 1999, the sentence upon which it was based should be set aside. Appellant avers that this Court should set aside his sentence and order a rehearing or, alternatively, because his pleas

were otherwise provident, only approve a sentence of 25 years confinement, with the remaining sentence as adjudged. We disagree.

The Constitution vests in Congress the authority "[t]o make Rules for the Government and Regulation of the land and naval Forces." U.S. CONST. art. I, § 8, cl. 14. In effect, Congress can legislate the structure of the military justice system. This includes the authority to establish what sentences can and will be adjudged for specific crimes. *Loving v. United States,* 517 U.S. 748, 767, 116 S.Ct. 1737, 135 L.Ed.2d 36 (1996). When creating the modern military justice system in 1950, Congress delegated to the President the authority to establish the maximum punishment for crimes prosecuted in courts-martial. *Id.* at 769, 116 S.Ct. 1737. In 1997 Congress modified this delegation of authority, legislating that for any crime where the President has prescribed confinement for life as a possible sentence, courts-martial automatically have the option of also adjudging a sentence of confinement for life without eligibility for parole. Pub.L. No. 105–85, § 581(a), 111 Stat. 1629, 1759 (18 Nov 1997)(codified as Title 10 U.S.C. § 856a).

At the time of Appellant's crimes and trial in 1999, the President, by Executive Order, had previously mandated that a military member convicted of non-capital murder could be sentenced to any "punishment other than death as a court-martial may direct," which would include confinement for life. MANUAL FOR COURTS-MARTIAL, UNITED STATES (1998 ed.), Part IV, ¶ 43e(2).[1] Therefore, due to Congress' statutory mandate in 1997, confinement for life without eligibility for parole was an authorized punishment for Appellant's crime of unpremeditated murder—a bill the President approved when he signed it into law on 18 November 1997.

### a. The Constitutional and Statutory Foundation of the Sentencing Scheme Employed within the Military Justice System

One of the fundamental precepts of our constitutional system is that the legislative

---

1. All references to the Manual for Courts–Martial will be to the 1998 edition unless otherwise noted.

power is vested in Congress. U.S. CONST. art. I, § 1; *Loving,* 517 U.S. at 758, 116 S.Ct. 1737; *United States v. Curtis,* 32 M.J. 252, 260 (C.M.A.1991). Within that legislative authority is the "power to fix the sentence for a federal crime." *Mistretta v. United States,* 488 U.S. 361, 364, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989)(citing *United States v. Wiltberger,* 5 Wheat. 76, 5 L.Ed. 37 (1820)). Likewise, the Constitution vests in Congress the authority to "regulate the Armed Forces," via a system of military justice, and to determine the military punishments applicable in that system. *See Loving,* 517 U.S. at 760–69, 116 S.Ct. 1737 (holding that this authority flows from Article I, Section 8, Clause 14 of the Constitution); *United States v. Teters,* 37 M.J. 370, 373 (1993)(stating the constitutional power to define Federal military offenses and prescribe their punishments lies with Congress).

### 1. Congress' Delegation of Sentencing Authority to the President

In 1950, Congress enacted the UCMJ. Title 10 U.S.C. §§ 801–946; *Loving,* 517 U.S. at 768, 116 S.Ct. 1737. The UCMJ contains the laws of procedure of the court-martial system, a list of enumerated crimes that may be tried within that system, and a broad outline of the authorized punishments that may be adjudged for those crimes. Title 10 U.S.C. §§ 801–946. While Congress established broad statutory maximum punishments allowable within the court-martial system, it delegated to the President extraordinary latitude in determining the maximum punishment that could be adjudged for each specific crime.[2] *Loving,* 517 U.S. at 769, 116 S.Ct. 1737; *Curtis,* 32 M.J. at 261.

As part of this structure, Congress in Article 18, UCMJ, stated that a general court-martial may, "under such limitations as the President may prescribe, adjudge any pun-

ishment not forbidden by this chapter, including the penalty of death when specifically authorized by this chapter." Art. 18, UCMJ. In order to further effectuate the delegation of sentencing authority to the President, Congress in Article 56, UCMJ, 10 U.S.C. § 856, stated that the "punishment which a court-martial may direct for an offense may not exceed such limits as the President may prescribe for that offense." Art. 56, UCMJ. The Supreme Court in *Loving* held that Articles 18 and 56, UCMJ, in conjunction with Article 36, UCMJ, 10 U.S.C. § 836, properly delegated to the President broad authority to establish the sentencing regime to be used within the court-martial system.[3] *Loving,* 517 U.S. at 769–70, 116 S.Ct. 1737.

### 2. The President's Exercise of the Delegated Sentencing Authority

Acting under the authority delegated by the UCMJ, the President has promulgated the specific punishments for each crime under the UCMJ. MCM, Part IV, ¶¶ 1–113. The punishments for the Punitive Articles are contained in Part IV of the MCM. Additionally, the President promulgated the Rules for Courts–Martial in 1984. Exec. Order 12,473, 49 Fed.Reg. 17,152 (1984). The Rules for Courts–Martial contain procedural rules for courts-martial proceedings that implement the laws established in the UCMJ. RULE FOR COURTS-MARTIAL 101(a), MANUAL FOR COURTS-MARTIAL, UNITED STATES (1998 ed.).

### b. Congressional Modifications of the Sentencing Scheme Employed within the Military Justice System

Beyond question, Congress may modify the sentencing scheme it has established for the court-martial system. *See* U.S. CONST. art. I, § 8, Clause 14; *Loving,* 517 U.S. at 760–69, 116 S.Ct. 1737. As our superior Court stated in *United States v. McDonald,*

---

2. This delegation to the President has never been absolute. From the inception of the UCMJ, Congress has established mandatory sentences for a narrow band of crimes. *See* Art. 106, UCMJ (creating a mandatory death sentence for spying); Arts. 118(1) and 118(4), UCMJ (creating a mandatory sentence of death or life in prison for premeditated murder and felony murder).

3. Appellant incorrectly states the President possesses this power because of his authority as Commander–in–Chief. Appellant's Brief of 1 Jul 2002 at 5. In contrast, the Supreme Court in *Loving* stated this was a power of Congress delegated to the President *in his role as* Commander–in–Chief. *Loving,* 517 U.S. at 772, 116 S.Ct. 1737.

"Congress would not be disabled from changing the sentencing procedures in the military." *United States v. McDonald,* 55 M.J. 173, 177 (2001). Such modifications have in fact occurred in a number of ways in the past, with differing effects on the President's sentencing authority. Congress set the mandatory punishments for some crimes enumerated in the UCMJ, implicitly limiting the sentencing authority delegated to the President in the UCMJ. *See* Art. 106, UCMJ, 10 U.S.C. § 906 (establishing death as the mandatory punishment for spying); Art. 118(1) and (4), UCMJ (establishing death or confinement for life as the mandatory punishments for premeditated and felony murder). Congress modified the maximum jurisdictional punishment of special courts-martial, in effect giving the President more "options" to choose from when utilizing the sentencing authority delegated in the UCMJ. *See Taylor v. Garaffa,* 57 M.J. 645, 647–48 (N.M.Ct.Crim.App.2002)(Congress' modification of Article 19, UCMJ, 10 U.S.C. § 919, enlarging special courts-martial's jurisdictional maximum punishment from confinement for 6 months to confinement for 1 year), *rev. denied,* 57 M.J. 455 (2002). Congress created additional punishments that take effect only under certain statutorily defined conditions that did not impact and are not impacted by the President's sentencing authority delegated in the UCMJ. *See United States v. Gorski,* 47 M.J. 370 (1997)(Congress' enactment of Article 58b, UCMJ, 10 U.S.C. § 858b, creating automatic forfeiture of pay and allowances contingent upon specific statutorily defined conditions). Congress created additional punishments that take effect at the discretion of the President and stand outside the sentencing scheme established in the UCMJ. *See Clinton v. Goldsmith,* 526 U.S. 529, 119 S.Ct. 1538, 143 L.Ed.2d 720 (1999)(Congress' amendment of Title 10 U.S.C. § 1161 and the enactment of Title 10 U.S.C. § 1167, allowing the President to "drop from the rolls" commissioned officers serving a sentence of confinement adjudged by a court-martial).

Congress exercised this authority again with the enactment of Article 56a, UCMJ, 10 USC § 856a. On 18 November 1997, the President signed Public Law 105–85, the National Defense Authorization Act for Fiscal Year 1998. Pub.L. No. 105–85, 111 Stat. 1629 (1997). This amended the UCMJ by adding Article 56a, which reads in part:

> For any offense for which a sentence of confinement for life may be adjudged, a court-martial may adjudge a sentence of confinement for life without eligibility for parole.

Pub.L. No. 105–85, § 581(a), 111 Stat. 1629, 1759 (1997). This provision took effect on the signing of the Act and was applicable to offenses occurring after that date. *Id.* This modification to the UCMJ was published in the 1998 edition of the MCM. MCM, App. 2, at A2–15. On 11 April 2002, the President signed Executive Order 13,262, which modified the Rules for Courts–Martial to note that confinement for life without the eligibility for parole was an authorized punishment under the UCMJ. Exec. Order 13,262, 67 Fed.Reg. 18,773 (2002); *see also United States v. Czeschin,* 56 M.J. 346, 348 (2002)(noting that language within the MCM often serves only to recite legal rules created elsewhere).

**c. The Effect of Article 56a, UCMJ, on the Sentencing Scheme Employed within the Military Justice System**

Through amendment of Article 56a, UCMJ, Congress mandated that for any crime where the President has prescribed confinement for life as a possible sentence, courts-martial automatically have the option of also adjudging a sentence of confinement for life without eligibility for parole. The plain language and legislative history of this statute demonstrate that it was self-implementing, requiring no Executive Order in order for it to take effect.[4]

---

4. The Joint Services Committee on Military Justice (JSC) amended Appendix 12, the Maximum Punishment Chart, of the MCM by adding footnote 4 after the word "life" for offenses with a maximum punishment including confinement for life. Footnote 4 reads, "With or without eligibility for parole." This change to the Maximum Punishment Chart first appeared in the 1998 edition to the MCM. MCM, App. 12, at A12–6. While the Maximum Punishment Chart is not law, it does reflect the JSC's belief that Article 56a, UCMJ, applied to all offenses in which con-

### 1. The Plain Language of Article 56a, UCMJ

The meaning of Article 56a, UCMJ, is demonstrated by a number of factors. First and foremost is the plain language of the statute. Article 56a, UCMJ, clearly states that whenever a court-martial may adjudge a sentence of confinement for life, it "may adjudge a sentence of confinement for life without eligibility for parole." It contains no language indicating Congress is merely extending one more sentencing "option" to the President, such as the addition of the words "under such [limitations] as the President may prescribe," in Article 19, UCMJ. *See Taylor*, 57 M.J. at 648. The statute is clear and straightforward and should be read as such. *See Amoco Production Co. v. Gambell*, 480 U.S. 531, 552–53, 107 S.Ct. 1396, 94 L.Ed.2d 542 (1987)(stating "[w]hen statutory language is plain, and nothing in the Act's structure or relationship to other statutes calls into question this plain meaning, that is ordinarily 'the end of the matter.' ").

Also revealing is the location of this new language within the UCMJ, specifically its placement as an addendum to Article 56, UCMJ. As explained previously, Article 56, UCMJ, delegates to the President the authority to set the maximum sentences for offenses under the UCMJ. Article 56a, UCMJ, follows immediately upon that delegation, modifying its boundaries. Noticeably, amending Article 18, UCMJ, 10 U.S.C. § 818, did not effect this modification to the UCMJ's sentencing scheme. Considering Article 18, UCMJ, marks the jurisdictional sentencing boundaries of general courts-martial, that route would have been expected had Congress been intending only to expand the general courts-martial sentencing "options" available to the President. This should be compared to Congress' recent modification of Article 19, UCMJ, 10 U.S.C. § 819, to enlarge special courts-martial's jurisdictional maximum punishment from confinement for 6 months to confinement for 1 year. *See Taylor*, 57 M.J. at 647–48 (discussing Congress' modification of Article 19, UCMJ).

finement for life was a possible sentence, without any action by the President being necessary.

### 2. The Legislative History of Article 56a, UCMJ

The legislative history of this statute likewise demonstrates Congress' intent was to mandate that whenever the President authorized a sentence of confinement for life, a sentence to confinement for life without eligibility for parole could also be adjudged. The Report of the House Committee on National Security on H.R. 1119,[5] states:

> This section would add a new article to the [UCMJ]. The new article would establish a court-martial punishment of confinement for life without parole. *This new punishment could be adjudged for any offense for which confinement for life is now an authorized punishment.* Under current law, any accused who receives a punishment of confinement for life may be considered for parole. The section would also provide that a sentence of life without parole may only be set aside or modified by the action of the [CA], secretary concerned, or other person authorized to act under normal post-trial review procedures, by court decision during appellate review, or by presidential pardon. Punishment of confinement for life without parole would apply to offenses committed after the date of enactment of the National Defense Authorization Act for Fiscal Year 1998.

H.R.Rep. No. 105–132 (1997)(emphasis added).

Congressional intent is further clarified when the House Report is analyzed in light of the military's parole system. Through Title 10 U.S.C. § 952 Congress delegated to the service Secretaries the authority to establish a parole system for military personnel confined in military correctional facilities. Title 10 U.S.C. § 952. In interpreting this grant, the Army Court of Criminal Appeals has stated:

> It is therefore clear that Congress intended for each of the military services to implement a parole system. Pursuant to this Congressional mandate, parole author-

5. Upon passage, H.R. 1119 became Pub.L. No. 105–85. Pub.L. No. 105–85, 111 Stat. 1629 (1997).

ity has been vested in individuals believed to be best qualified and in the best position to obtain and evaluate information relevant to release from confinement, namely, each military service Secretary. It is equally clear that neither Congress nor the President has authorized courts-martial to impose a sentence that would be inconsistent with this intent or to interfere with this parole authority, such as a sentence of confinement for life without the possibility of parole.

*United States v. Smith,* 44 M.J. 720, 724–25 (Army Ct.Crim.App.1996), *sentence set aside on other grounds,* 46 M.J. 452 (1997); *see also Schick v. Reed,* 419 U.S. 256, 270, 95 S.Ct. 379, 42 L.Ed.2d 430 (1974) (Marshall, J., dissenting)(citing to Title 10 U.S.C. §§ 952–93 as support for the proposition that confinement without possibility of parole is unknown to military law). It should therefore be clear that when the House Committee on National Security stated that, "[u]nder current law, any accused who receives a punishment of confinement for life may be considered for parole," it was speaking about the effects of Title 10 U.S.C. § 952. It follows that it was Congress' intent to modify the effects of this past legislation[6] by mandating that a sentence to confinement for life without eligibility for parole is available as a sentence for any crime where the President had authorized confinement for life as a punishment.

**d. Appellant's Erroneous Interpretation of the Effect of Article 56a, UCMJ, on the Sentencing Scheme Employed within the Military Justice System**

Appellant argues that this Court should set aside his sentence, because life without eligibility for parole was not an authorized punishment under the UCMJ for violation of Article 118(2), UCMJ, at the time of his crime and trial. Motion to Correct Errata of 2 Jul 2002. This assignment of error is

based on the argument that Article 56a, UCMJ, required implementation by an Executive Order to become effective. Accordingly, Appellant asserts that:

> The absence of an Executive Order implementing life without eligibility for parole as an authorized punishment means that [life without eligibility for parole] was not an authorized punishment at the time of Appellant's court-martial.

Appellant's Brief of 1 Jul 2002 at 11.

Appellant's argument is founded on two premises, both of which are incorrect. The first premise is that Congress, in enacting Article 56a, UCMJ, was increasing "what the maximum sentence *may* be for an offense committed under the UCMJ." Appellant's Brief of 1 Jul 2002 at 10. Thus, Appellant argues that Congress merely provided the President more "options" to choose from when exercising the sentencing authority delegated by the UCMJ. As illustration of this point, Appellant compares Congress' passage of Article 56a, UCMJ, with its modification of Article 19, UCMJ.[7] Appellant's Brief of 1 Jul 2002 at 10. Appellant's point is that in both statutes Congress only intended to delegate to the President more authority to prescribe greater punishments at courts-martial. *Id.* Under Appellant's analysis, whether the President chose to utilize that authority is up to his discretion in his role as Commander-in-Chief. *Id.* at 5. As explained previously, this is contrary to the plain language and legislative history of Article 56a, UCMJ. *See also United States v. Pritt,* 54 M.J. 47, 50 (2000)(holding that an Executive Order was not required to make a criminal offense prescribed by Congress punishable at a court-martial), *cert. denied,* 531 U.S. 1079, 121 S.Ct. 779, 148 L.Ed.2d 677 (2001).

The second premise, which builds on the first, is that at the time of Appellant's crime and trial, the President had affirmatively

**6.** Examining the statutory provision in Public Law 105–85 that immediately follows the provision creating Article 56a, UCMJ, further enforces this. That provision amends Title 10 U.S.C. § 952. Pub.L. No. 105–85 § 582, 111 Stat. 1629, 1760 (1997).

**7.** Appellant's comparison and accompanying analysis does not account for the fact that in the statute *sub judice,* Congress chose not to modify Article 18, UCMJ. Appellant's Brief of 1 Jul 2002 at 10–11. As previously stated, that would seem to have been the logical choice had Congress in fact intended merely to delegate to the President more sentencing "options."

mandated that life with possibility of parole was the maximum punishment for Article 118(2), UCMJ. It would then follow that confinement for life without eligibility for parole exceeded the maximum authorized punishment and was therefore unavailable as a punishment at Appellant's court-martial. As initial support for this premise, Appellant points to Executive Order 13,262 changing R.C.M. 1003(b)(7). Appellant's Brief of 1 Jul 2002 at 9. Appellant states that through that Executive Order, "[t]he President has now authorized courts-martial to impose a sentence of life without the possibility of parole." *Id.* Appellant is incorrect in his initial assertion that either the pre- or post-April 2002 R.C.M. 1003(b)(7) specified the maximum sentence to confinement authorized by the President. At the time of Appellant's crime and trial, R.C.M. 1003(c)(1)(A)(i) stated that the "maximum limits for the authorized punishments of confinement . . . are set forth for each offense listed in Part IV of this Manual." R.C.M. 1003(c)(1)(A)(i).[8]

Appellant is equally incorrect in his ultimate conclusion that prior to April 2002, there was some form of Presidential limitation on the maximum sentence to confinement that could be adjudged at a general court-martial for violation of Article 118(2), UCMJ.[9] The maximum punishment prescribed under Part IV of the MCM for a violation of Article 118(2) was, "such punishment other than death as a court-martial may direct." MCM, Part IV, ¶ 43e(2). Therefore, at the time of Appellant's crimes and trial, the President had directed that any punishment authorized by the UCMJ, other than death, could be adjudged for a violation of Article 118(2), UCMJ.[10] Even under the erroneous interpretation of Article 56a, UCMJ, suggested by Appellant, authorized punishment would include confinement for life without eligibility for parole.

### e. Conclusion

The plain language of Article 56a, UCMJ, as well as its legislative history, demonstrate that Congress' intent was to mandate that for any crime where the President prescribed confinement for life as a possible sentence, courts-martial automatically have the option of also adjudging a sentence of confinement for life without eligibility for parole. Appellant was convicted at a general court-martial of violating Article 118(2), UCMJ. As even Appellant concedes, at the time of his crime and trial the President had directed that violation of Article 118(2) could be punished with a sentence of confinement for life. Appellant's Brief of 1 Jul 2002 at 4. Because of the availability of that sentence, Article 56a, UCMJ, came into effect and mandated that the general court-martial Appellant was brought before had the authority to sentence him to confinement for life without eligibility for parole.

However, even assuming that Article 56a, UCMJ, was merely expanding the sentencing "options" available to the President, the regulations promulgated by the President at the time of Appellant's crimes and trial provided that any authorized punishment under the UCMJ, other than death, could be adjudged for a violation of Article 118(2), UCMJ. MCM, Part IV, ¶ 43e(2). Even under Appellant's erroneous interpretation of Article 56a, UCMJ, the authorized punishment for his crimes would include the punishment of confinement for life without eligibility for parole. In those cases where the UCMJ and the MCM are found to be in conflict over the maximum authorized punishment to confinement, the UCMJ controls when such conflicts arise. *See generally Pritt*, 54 M.J. at 50. In the case *sub judice*, no conflict existed between the UCMJ and the MCM on the authorized punishment for committing un-

---

**8.** This R.C.M. was not altered by the Executive Order cited by Appellant to demonstrate Presidential "implementation" of Article 56a, UCMJ, via R.C.M. 1003(b)(7). Exec. Order 13,262, 67 Fed.Reg. 18,773 (2002).

**9.** As previously argued, the limitation on the maximum sentence to confinement, *i.e.*, the availability of parole, was Congressionally man-

dated by Title 10 U.S.C. § 952. *See Smith*, 44 M.J. at 724–25.

**10.** It should be noted that the Executive Order cited by Appellant to demonstrate Presidential "implementation" of Article 56a, UCMJ, did not alter the maximum punishment for Article 118(2), UCMJ, prescribed under the punitive Articles. *Id.*

premeditated murder under Article 118(2), UCMJ.

We hold, therefore, that a sentence to life in prison without eligibility for parole was an authorized punishment under the UCMJ at the time of Appellant's crime and trial. As such, we deny Appellant's request for relief.

### Sentence Appropriateness

In Appellant's second assignment of error, he asserts that his sentence is inappropriately severe. Appellant avers that this Court should only approve a sentence of 25 years confinement with the remaining sentence as adjudged. We disagree.

This Court may disapprove any portion of a sentence, which it deems to be unjustifiably severe. Art. 66c, UCMJ; *United States v. Tardif*, 57 M.J. 219 (2002); *United States v. Healy*, 26 M.J. 394 (C.M.A.1988). The Court of Appeals for the Armed Forces has recognized "the widely adopted view 'that the punishment should fit the offender and not merely the crime'". *United States v. Mack*, 9 M.J. 300, 317 (C.M.A.1980)(quoting *Williams v. New York*, 337 U.S. 241, 247, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949)). As this Court reinforced, "[a]n appropriate sentence results from 'individualized consideration' based upon 'the nature and seriousness of the offense and the character of the offender.'" *United States v. Madigan*, 54 M.J. 518, 522 (N.M.Ct.Crim.App.2000)(quoting *United States v. Rojas*, 15 M.J. 902, 919 (N.M.C.M.R.1983), *aff'd*, 20 M.J. 330 (C.M.A. 1985)).

It is well settled that within the limits of punishment prescribed by the UCMJ, a court-martial is free to impose any sentence that it determines is fair and just. *United States v. Turner*, 14 C.M.A. 435, 437, 34 C.M.R. 215, 217, 1964 WL 4998 (1964); R.C.M. 1002. Courts of Criminal Appeals are tasked only with determining whether justice was properly administered and whether the accused received the punishment he deserved. *Healy*, 26 M.J. at 395. A sentence should not be disturbed "unless the harshness of the sentence is so disproportionate as to cry out for sentence equalization." *United States v. Usry*, 9 M.J. 701, 704 (N.C.M.R. 1980).

The CA approved Appellant's sentence, which included life without possibility of parole, thus determining that this was appropriate. CA's Action of 11 Jul 2000. Appellant's assignment of error amounts to nothing more than a request for clemency, which is the prerogative of the CA. *Healy*, 26 M.J. at 395–96. Appellant received the individual consideration required based on the seriousness of his offenses and his individual character, which is all the law requires. *Rojas*, 15 M.J. at 919.

"Murder is one of the most serious offenses known to society." *United States v. Ginn*, 1 C.M.A. 453, 456, 4 C.M.R. 45, 48, 1952 WL 2683 (1952). Moreover, our superior Court has recognized the aggravating nature of criminal conduct involving noncommissioned officers. *United States v. Thompson*, 22 M.J. 40, 41 (C.M.A.1986)(noncommissioned officers by virtue of their rank and authority have the responsibility to maintain high personal standards). In the case *sub judice*, Appellant was a sergeant in the U.S. Marine Corps, who brutally assaulted his wife in the presence of his sleeping child by punching her to the floor and then slamming her face into his barrack room's concrete floor. *See* Prosecution Exhibits 1 and 2. The catalyst for this assault, according to Appellant, was an argument over child support that devolved into his wife threatening to falsely accuse him of rape. After this assault, Appellant dragged her unconscious body to her car and then, rather than driving her to get emergency medical attention, drove to an isolated wooded area and abandoned her body. At some point between Appellant's barrack's room and the woods where he eventually abandoned her body, his wife died from the injuries Appellant had inflicted.

While Appellant argues that sentencing evidence demonstrated that he was a "polite and normally gentlemanly man who cared about his daughter," Appellant's Brief of 1 Jul 2002 at 13, he fails to demonstrate any reason why a sentence of life without possibility of parole is inappropriately severe in his case. There can be no doubt that Appellant's misconduct was serious and merited

the punishment adjudged. After reviewing the entire record, we find that the sentence is appropriate for this offender and his offenses. *Id.* at 395–96; *Snelling,* 14 M.J. at 268. Accordingly, we decline to grant relief.

**Denial of Prisoner's Access to the Courts**

■ In Appellant's third assignment of error, he asserts that he was denied access to a law library during his incarceration at the Marine Corps Base Brig, Camp Lejeune, North Carolina. Appellant avers that this Court should only approve a sentence of 25 years confinement with the remaining sentence as adjudged. We disagree.

Appellant ignores the distinction between the right to detailed defense counsel during trial and on direct appeal and a prisoner's right of access to the courts to collaterally attack his sentence or the conditions of his confinement. *See* Arts. 27 and 70, UCMJ, 10 U.S.C. §§ 827 and 870; *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); *Douglas v. California,* 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963). While these rights both ultimately stem from the Sixth Amendment, and *Gideon v. Wainwright* and its progeny are widely-cited in *Lewis v. Casey,* 518 U.S. 343, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996), and *Bounds v. Smith,* 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977), these two lines of cases implicate two distinct concerns. The right to counsel is concerned with ensuring an accused criminal receives a fair trial. *United States v. Palenius,* 2 M.J. 86, 90 (C.M.A. 1977). The right of access to the courts is concerned with ensuring that once an accused is imprisoned after trial, he is able to effectively bring his grievances to light in court. *See Bounds v. Smith,* 430 U.S. at 825, 97 S.Ct. 1491 (stating the issue in that case was whether law libraries are needed to give prisoners a reasonably adequate opportunity to present claimed violations of fundamental

constitutional rights to the courts). Because of these distinct concerns, the right to counsel requires much more of the Government than the right of access to the courts. Specifically, it requires that individual legal counsel be assigned to represent the interests of an accused in court at trial and on direct appeal. In stark contrast, a prisoner's right of access to the courts to file grievances can be satisfied by the mere provision of a reasonably well-stocked law library. These distinct considerations were addressed by the Air Force Court of Criminal Appeals in *United States v. Carter,* 56 M.J. 649 (A.F.Ct. Crim.App.2001), *rev. den'd,* 56 M.J. 467 (2002).

In the case *sub judice,* the Government was statutorily and constitutionally required to provide detailed defense counsel to Appellant to defend him at trial. *See Palenius,* 2 M.J. at 90 (holding that the right to be represented by counsel at trial and on appeal are primary rights of persons accused of a crime in the civilian and military communities in the United States). Pursuant to this requirement, Appellant was afforded two military defense counsels at trial. Both trial defense counsel vigorously represented Appellant in the pretrial phase, as evidenced by their success in securing Appellant a very favorable pretrial agreement. Appellate Exhibits I and II. Then, during the post-trial/clemency phase, trial defense counsel filed an extensive clemency request. Request for Clemency of 21 Dec 1999. Now, on appeal, Appellant has been detailed appellate defense counsel by the Navy–Marine Corps Appellate Review Activity.[11] Appellant ignores this continuous legal representation and argues that he was prejudiced by his inability to personally research and raise his first three assignments of error during the post-trial/clemency phase of this proceeding.[12] Because competent, qualified, and ef-

---

**11.** Interestingly, Appellant cites *United States v. Lynn,* 54 M.J. 202 (2000), in support of the position that appellate defense counsel detailed by the Navy–Marine Corps Appellate Review Activity do not meet the minimum constitutional standards required to provide Navy and Marine appellants legal counsel on appeal. Appellant's Brief of 1 Jul 2002 at 15–16. If this is in fact Appellant's position, appellate defense counsel's

vigorous defense of Appellant in this case is evidence of the high quality of counsel regularly provided to Navy and Marine appellants. Further, Appellant's argument misses the mark, because the claimed prejudice occurred while Appellant was still represented by trial defense counsel in the post-trial/clemency phase.

**12.** That would include this assignment of error. Appellant is therefore arguing that if he had

fective trial defense counsel represented Appellant during this phase of the proceeding, as addressed below, we reject this assignment of error.

### Ineffective Assistance of Counsel

██ In Appellant's fourth assignment of error, he asserts that he was denied his Sixth Amendment right to effective assistance of counsel when his attorney failed to call military witnesses during sentencing. Appellant avers that this Court should set aside his sentence and remand his case to a court-martial for a new sentencing hearing or, in the alternative, only approve a sentence of 25 years confinement with the remaining sentence as adjudged. We disagree.

The Sixth Amendment of the Constitution and Article 27, UCMJ, guarantee an accused the right to the effective assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970); *United States v. Ingham*, 42 M.J. 218, 223 (1995). The competency of counsel is presumed. *United States v. Scott*, 24 M.J. 186, 188 (C.M.A.1987). Thus, Appellant in claiming ineffective assistance "must surmount a very high hurdle." *United States v. Moulton*, 47 M.J. 227, 229 (1997). To prevail, Appellant must demonstrate: (1) his counsel was deficient; and (2) he was prejudiced by such deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Assistance of counsel is deficient when counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* Appellant has suffered prejudice only when counsel's performance deprived him of a fair trial. *Id.; Scott*, 24 M.J. at 188.

Trial defense counsel presented a vigorous sentencing case on Appellant's behalf. Trial defense counsel submitted four personal letters of support from Appellant's family and friends. Defense Exhibits B through E. All were heartfelt pleas of compassion on behalf of Appellant, containing numerous details about his personal life, family history, and the community from which he came. These letters were an attempt to humanize Appellant and demonstrate to the military judge the background and life of the man of whom he was sitting in judgment.

Trial defense counsel also introduced persuasive photographic evidence documenting Appellant's family life and career in the military. Defense Exhibits F through P. This again was an attempt, as trial defense counsel stated in closing, to show the military judge the "pages of [Appellant's] life" that stood separate from the crimes to which he pled guilty. Record at 234. Appellant's military service record was also entered into evidence. Prosecution Exhibits 13 and 14. As trial defense counsel argued in closing, this documentation showed "no negative comments about his character of service" in either the Army or Marine Corps. Record at 238. This documentation also demonstrated that Appellant had served well under hostile conditions in Somalia.

Numerous sentencing witnesses called by trial defense counsel augmented the documentary evidence before the military judge. These witnesses included the following people:[13] Lawrence Thomas, a family friend since the two were 5 or 6 years old; Maria Thomas, the mother of Lawrence Thomas, who is a close family friend of Appellant's family; Staff Sergeant Alonzo Wallace, U.S. Army, Appellant's brother; Julius Wallace, Appellant's father; and Irene Wallace, Appellant's mother. These witnesses vividly painted a portrait of a young man from a loving family and community who, while not condoning his actions, were willing to assist in any way possible with Appellant's return to society. Consistent with this strategy, Appellant made a brief unsworn statement acknowledging his personal acceptance of guilt and begging forgiveness for his crimes.

On appeal, Appellant asserts trial defense counsel failed to offer a sufficient sentencing

---

access to a law library, he would have been able to research the issue of not having had access to a law library, and could have then raised this non-issue in his clemency request.

13. Trial defense counsel spent considerable time in Appellant's home town, Albany, GA, investigating his background in order to build his sentencing case and decide what witnesses to call. Motion to Attach Documents of 3 Jul 2002 (Declaration of LtCol John M. Schum, USMC).

case at trial, arguing his "[trial] defense counsel failed to present sufficient evidence of rehabilitation, mitigation, and extenuation under R.C.M. 1001." Appellant's Brief of 1 Jul 2002 at 17. Specifically, Appellant argues that trial defense counsel "failed to seek out available military witnesses to testify to his military character." *Id.* The "available military witnesses" in question are Sergeant (Sgt) David B. Gattney, U.S. Marine Corps, and Gunnery Sergeant (GySgt) Rodney C. Pettit, U.S. Marine Corps. Motion to Attach Documents of 3 Jul 2002. Appellant states these witnesses "believed that [A]ppellant's rehabilitative potential was outstanding." Appellant's Brief at of 1 Jul 2002 at 17–18. The declarations (identified as "Affidavits") proffered indicate a different story. In his declaration, Sgt Gattney only stated that he "would have testified favorably in regards to Sgt Wallace's military character and performance." Motion to Attach Documents of 3 Jul 2002 (Declaration of Sgt David B. Gattney, USMC, of 2 May 2002). In his declaration, GySgt Petit likewise only stated he "would have testified favorably to Sgt Wallace's military character and performances of his duties," subject to the limitation that his "testimony would have been limited to my observations as to military character and duty performance during the period I served with him." Motion to Attach Documents of 3 Jul 2002 (Declaration of GySgt Rodney C. Pettit, USMC, of 10 Apr 2002).

Good military character does not automatically equal rehabilitative potential. R.C.M. 1001(b)(5). Nothing in the declarations demonstrate that either proposed witness "possess[ed] sufficient information and knowledge about [Appellant] to offer a rationally-based opinion that [would have been] helpful to the sentencing authority" in regards to his rehabilitative potential. *Id.* But most importantly, neither proposed witness even stated in their declarations that, under the circumstances, they believed Appellant had rehabilitative potential.

Appellant's assignment of error also ignores that trial defense counsel, with the knowledge and apparent concurrence of Appellant, made a tactical decision on how to focus the sentencing case. Motion to Attach Documents of 3 Jul 2002 (Declaration of LtCol John M. Schum, USMC, of 2 Jul 2002). Fearing effective cross-examination on the impact of Appellant's crimes on his unit,[14] trial defense counsel made the tactical decision to introduce Appellant's military character and performance via service book entries. *Id.* Therefore, Appellant's argument completely misses one of the well-settled principles underlying Sixth Amendment analysis: that a defense counsel's tactical decisions are virtually unchallengeable. *See United States v. Rivas,* 3 M.J. 282, 289 (C.M.A.1977)(refusing to second-guess the strategic or tactical decisions of defense counsel); *see also United States v. Sanders,* 37 M.J. 116, 118 (C.M.A.1993)(dismissing an appellant's second-guessing of tactical decisions as "Monday-morning quarterbacking"). We find that trial defense counsel's performance, both over the course of the trial and during the sentencing hearing, far exceeded the minimum level required by *Strickland,* 466 U.S. at 687, 104 S.Ct. 2052. Accordingly, we deny his request for relief.

**Trial Counsel's Sentencing Argument**

In Appellant's fifth assignment of error, he asserts that improper comments during trial counsel's sentencing argument amounted to plain error. Appellant avers that this Court should only approve a sentence of 25 years confinement with the remaining sentence as adjudged. We disagree.

R.C.M. 1001(g) states, in relevant part, that a "[f]ailure to object to improper argument before ... sentencing shall constitute waiver of the objection." *See generally United States v. Reist,* 50 M.J. 108, 110 (1999). In the case at bar, Appellant premises his assignment of error on the allegation that during the sentencing argument, trial counsel argued that Appellant acted with

---

**14.** It should be noted that Appellant was in a duty status at his barracks at the time he murdered his wife and dumped her body off base. Prosecution Exhibit 1. This, as well as Appellant's attempt to induce a junior Marine to impede the ensuing investigation, would have likely opened up an extremely fruitful cross-examination of any good military character witnesses produced.

premeditation when he murdered his wife. Appellant's Brief of 1 Jul 2002 at 19–21. Such an argument by trial counsel would have contradicted Appellant's plea to unpremeditated murder under Article 118(2), UCMJ, vice premeditated murder under Article 118(1), UCMJ. While Appellant cites the record at page 225 to support his argument, he fails to quote the specific objectionable statements of the trial counsel. *See* Appellant's Brief of 1 Jul 2002 at 20–21. Appellant's argument appears [15] to be founded on the following statement by the trial counsel:

His thoughts were of inflicting great bodily harm, and his intent was to kill Tonya Wallace as she lay there helplessly on the floor, her face pounded against the deck, and that awful popping sound ringing in the air.

Record at 225.

Appellant failed to object to these comments at court-martial. Accordingly, Appellant forfeited any error through his inaction. R.C.M. 1001(g); *see also United States v. Doctor*, 7 C.M.A. 126, 135, 21 C.M.R. 252, 261, 1956 WL 4578 (1956)(stating, "It is a little difficult for us to find misconduct which compels a reversal when it purportedly arises out of an argument which had so little impact on [trial] defense counsel that they sat silently by and failed to mention it . . . at the time of trial.").

▉▉▉▉ Even if this Court were to decline to apply forfeiture, Appellant's claim is not well taken, because he has not demonstrated that trial counsel's argument constituted plain error. To prevail under a plain error analysis, Appellant has the burden of persuading the Court that: (1) there was an error; (2) it was plain or obvious; and (3) the error materially prejudiced a substantial right. *United States v. Kho*, 54 M.J. 63, 65 (2000); *United States v. Finster*, 51 M.J. 185, 187 (1999); *United States v. Powell*, 49 M.J. 460, 463–65 (1998). The plain error "doctrine is reserved for 'those circumstances in which a miscarriage of justice would otherwise result.'" *United States v. Zaptin*, 41 M.J. 877, 880 (N.M.Ct.Crim.App.1995)(quoting *United*

*States v. Jackson*, 38 M.J. 106, 111 (C.M.A. 1993)); *see* Art. 59(a), UCMJ. Appellant fails to establish plain error for the following three reasons:

### 1. Trial Counsel's Arguments were Permissible

Appellant plead to and was found guilty of the unpremeditated intentional murder of Tonya Wallace, in violation of Article 118(2), UCMJ. Throughout his providence inquiry, Appellant acknowledged his actions were taken with the intent of causing great bodily harm to and the death of his wife, Tonya Wallace. In accord with Appellant's statements, trial counsel argued during sentencing that Appellant's "thoughts were of inflicting great bodily harm, and his intent was to kill Tonya Wallace." Record at 225. This is an accurate description of an "intent to kill" under Article 118(2), UCMJ, not "premeditation" under Article 118(1), UCMJ. *Compare* MCM, Part IV, ¶ 43c(2) *and* MCM, Part IV ¶ 43c(3)(defining "premeditation" and "intent to kill" as two distinct forms of *mens rea*). Therefore, trial counsel was not contradicting Appellant's admissions made during providence as Appellant now alleges.

### 2. Any Error was neither Plain nor Obvious

The U.S. Supreme Court in *United States v. Frady*, 456 U.S. 152, 163, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982), defined plain error as "error so 'plain' the trial judge and prosecutor were derelict in countenancing it, even absent the defendant's timely assistance in detecting it." Such is not the case here. If there was error upon the military judge's part for failing to *sua sponte* cut the trial counsel's argument off, it was neither plain nor obvious. Therefore, a reasonable military judge could not have been expected to *sua sponte* intervene under these circumstances. *See generally United States v. Olano*, 507 U.S. 725, 734, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993)(discussing whether error was plain or obvious when the error was not clear under current law). Appellant has not

---

**15.** This assumption is based in part on the fact that the rest of the trial counsel's argument on this page deals with Appellant's failure to demonstrate remorse or regret after assaulting his wife. Record at 225.

met his burden of persuading this Court that there was plain error. *See United States v. Barrazamartinez,* 58 M.J. 173, 175 (2003)(citing *Powell,* 49 M.J. at 464).

### 3. *Appellant Fails to Demonstrate Prejudice*

Finally, assuming error that was plain or obvious, Appellant fails to demonstrate prejudice. In fact, Appellant has cited to no prejudice whatsoever in his brief. Therefore, this assignment of error is analyzed in light of the fact that we are convinced the military judge in Appellant's judge alone guilty plea case, would not be improperly swayed by the sentencing argument of trial counsel. *See United States v. Prevatte,* 40 M.J. 396, 398 (C.M.A.1994)(holding that a military judge is presumed to know and follow the law). As addressed by our superior Court in *Prevatte,* prejudice in this light is illusory. *Prevatte,* 40 M.J. at 398. Appellant has failed to demonstrate error, plain or otherwise, or that any prejudice resulted from trial counsel's statements. Therefore, we deny Appellant's request for relief.

### Pretrial Agreement Suspension Provision Violates Public Policy

█ In Appellant's sixth assignment of error, he asserts that a suspension period for the period of confinement and 1 year from the date of release violates public policy. Appellant avers that this Court should only approve a period of suspension of 5 years from the date the sentence was announced. We disagree.

A CA may suspend a portion of the sentence for "a stated period or until the occurrence of an anticipated future event." R.C.M. 1108(d). A period of suspension "shall not be unreasonably long." *Id.* In Appellant's case, the adjudged confinement was life without possibility of parole. The CA suspended all confinement in excess of 30 years for the period of confinement plus 12 months after Appellant's release. CA's Action of 11 July 2000 at 2. Such a suspension was negotiated as part of Appellant's pretrial agreement. Appellate Exhibit II.

This Court has held that "[p]lacing an appellant on probation for the entire period of his confinement is reasonable as a control and motivating measure and is not violative of public policy or of R.C.M. 1108(d)." *United States v. Ratliff,* 42 M.J. 797, 802 (N.M.Ct.Crim.App.1995). In *Ratliff,* the CA suspended all confinement in excess of 10 years for the duration of the appellant's confinement plus 1 year. *Id.* at 798. This Court held that placing the appellant on probation for approximately 11 years of an adjudged 15 year sentence was not unreasonably long. *Id.* at 802. Similarly, in the case at bar, it is this Court's opinion that placing Appellant on probation for 31 years of an adjudged life sentence without possibility of parole is not unreasonably long and does not violate public policy. Therefore, we reject Appellant's request for relief.

### Erroneous SJAR and CA's Action

In Appellant's seventh assignment of error, he asserts that the SJAR and the CA's action both misstate the agreed upon sentence limitation and the CA approved the wrong sentence. Appellant avers that this Court should set aside the CA's action and remand this case for a new SJAR and CA's action. We disagree.

█ Before a CA takes action on a case that involves an adjudged bad-conduct discharge, the CA "shall obtain and consider the written recommendation of his staff judge advocate or legal officer." Art. 60(d), UCMJ, 10 U.S.C. § 860(d); *see also* R.C.M. 1106. R.C.M. 1106(f)(5) mandates service of the recommendation on counsel for the accused, and it includes a period of 10 days from receipt of the record of trial or the recommendation, whichever is later, for that counsel to comment on any matter in the recommendation. There can be no doubt the SJAR is an important component of post-trial review. *See United States v. Cunningham,* 44 M.J. 758, 763 (N.M.Ct.Crim.App.1996)(noting that because of the significance of the CA's action in the military justice system, the SJAR is particularly important). However, failure to object to errors in the SJAR will constitute forfeiture of the issue, and an appellant will not be entitled to relief on appeal unless the error rises to the level of "plain error." R.C.M.

1106(f)(6); *see Kho*, 54 M.J. at 65; *see also Cunningham*, 44 M.J. at 763.

 Appellant's counsel was served with the SJAR on 29 March 2000. Acknowledgement of Service of 29 Mar 2000. While an extensive request for clemency had been filed on 21 December 1999, nothing was submitted in response to the SJAR. Clemency Request of 12 Apr 2000. Thus, Appellant is not entitled to relief, unless he can establish that any error in the SJAR was so substantial as to constitute plain error. Appellant claims that the SJAR was deficient in that it: (1) misstates the agreed upon sentence limitation in the pretrial agreement; and (2) fails to state Appellant earned an honorable discharge from the U.S. Army. Appellant's Brief of 1 Jul 2002 at 22.

First, Appellant is incorrect about any misstatement of the agreed-upon sentence limitation.[16] The pretrial agreement allows approval of the sentence as adjudged but requires all confinement in excess of 30 years to be suspended for the period of confinement served plus 12 months. Appellate Exhibit II. This is what the SJAR states as the sentence limitation. SJAR of 28 Mar 2000 at 4. Therefore, Appellant's first allegation is factually incorrect and not well taken.

Second, Appellant fails to offer any authority that would require an SJA to include information about an accused's prior honorable service in his recommendation. This Court has found no controlling precedent on whether information about prior honorable service is specifically required to be included in the SJAR. However, assuming *arguendo* that the SJAR should have put the CA on notice that such service existed, the SJAR in this case effectively did so. While the SJAR did not specifically state that Appellant received prior honorable discharges, it did accurately reflect his two previous enlistments, that he had been awarded numerous Army awards, including the Army Achievement Medal, and that he had no disciplinary history. This information therefore effectively indicated the honorable nature of his prior service. In Appellant's case, finding similar

information in the SJAR was sufficient to have placed the CA on notice of Appellant's prior honorable service.

Finally, even assuming error, Appellant fails to demonstrate prejudice. In taking his action, the CA specifically considered the record of trial, which in Prosecution Exhibit 14 contained explicit information detailing Appellant's prior honorable discharges from the Army. CA's Action of 11 Jul 2000 at 3; Prosecution Exhibit 14 at 1–3. Therefore, this Court declines to grant relief.

### Post–Trial Processing Delay

In Appellant's eighth assignment of error, he asserts that the CA's 290–day delay from the date of trial to complete his action is unreasonable and excessive post-trial delay that violates his rights. Appellant avers that this Court should reassess his sentence and set aside the period of suspension in excess of 5 years from the date the sentence was announced. We disagree.

 An "appellant has a right to a speedy post-trial review of his case." *United States v. Williams*, 55 M.J. 302, 305 (2001). In reviewing a case where there is an alleged excessive delay in its post-trial processing, this Court must determine whether the excessive delay materially prejudiced the appellant, thus requiring a remedy under Article 59(a), UCMJ. *Tardif*, 57 M.J. at 224. If there is no material prejudice to Appellant in this case, then this Court is "required to determine what findings and sentence 'should be approved,' based on all the facts and circumstances reflected in the record, including the unexplained and unreasonable post-trial delay." *Id.; see* Art. 66(c), UCMJ. However, "appellate relief under Article 66(c) should be viewed as the last recourse to vindicate, where appropriate, an appellant's right to timely post-trial processing and appellate review." *Tardif*, 57 M.J. at 225.

 Appellant bears the burden of proving the post-trial delay was unreasonable. However, even if this Court found that there was unreasonable post-trial delay in

---

**16.** Appellant's brief does not provide the specifics of the alleged inaccuracy. Appellant's Brief of 1 Jul 2002 at 22.

this case, unreasonable delay alone does not entitle Appellant to relief under Articles 59(a) or 66(c), UCMJ. First, Appellant fails to allege or demonstrate he suffered any actual prejudice, and thus he is not entitled to any relief under Article 59(a), UCMJ. Appellant's Brief of 1 Jul 2002 at 23. Second, Appellant fails to indicate what, if anything, in the entire record entitles him to relief under Article 66(c), UCMJ. *Tardif,* 57 M.J. at 225. It is this Court's opinion that relief pursuant to Article 66(c), UCMJ should only be granted under the most extraordinary of circumstances.

■ In this case, Appellant can only cite unreasonable delay as a basis for relief. Because Appellant fails to establish any other facts or circumstances in the entire record as a basis for relief, this is an inappropriate case for this Court to exercise its "'broad power to moot claims of prejudice'" under Article 66(c), UCMJ. *United States v. Collazo,* 53 M.J. 721, 727 (Army Ct.Crim.App.2000)(quoting *United States v. Wheelus,* 49 M.J. 283, 288 (1998)).

Furthermore, neither Appellant nor trial defense counsel raised the issue of delay with the military judge or the SJA or the CA during the entire post-trial processing period. Appellant raises it for the first time here on appeal. Thus, as part of "all the facts and circumstances reflected in the record," Appellant's lengthy silence is strong evidence that he suffered no harm and that this is not an appropriate case for this Court to exercise its Article 66(c), UCMJ, authority. *See United States v. Fricke,* 53 M.J. 149, 154 (2000)(holding "that the failure to object to a military magistrate or chain of command is strong evidence that unlawful pretrial punishment did not occur"). "[Defense] counsel at the trial level are particularly well-situated to protect the interests of their clients by addressing post-trial delay issues before action by the convening authority," and the "[trial] defense counsel can protect the interests of [an appellant] through complaints ... to the convening authority." *Tardif,* 57 M.J. at 225. Therefore, any relief under Article

66(c), UCMJ, would serve only to give a windfall to this otherwise undeserving Appellant. As such, we deny Appellant's request for relief.

## Unreasonable Multiplication of Charges

■ In Appellant's ninth assignment of error, he asserts that kidnapping and murder resulting from the same continuous course of conduct is an unreasonable multiplication of charges (UMC). Appellant avers that this Court should dismiss the kidnapping charge and only approve a sentence of 25 years confinement with the remaining sentence as adjudged. We disagree.

Appellant ignores the fact that at trial, the military judge *sua sponte* found the two charges multiplicious for sentencing purposes. Record at 249. The doctrine of multiplicity for sentencing purposes has been expressly recognized by the Rules for Courts–Martial, as well as our superior Court. R.C.M. 906(b)(12); *United States v. Quiroz,* 55 M.J. 334, 339 (2001). "This doctrine may well be subsumed under the concept of an [UMC] when the military judge ... determines that the nature of the harm requires a remedy that focuses more appropriately on punishment than on findings." *Id.* at 339. In effect, the military judge has already resolved this assignment of error in Appellant's favor.

The doctrine of UMC is designed to address the potential for an abuse of discretion in charging an accused based on the same act or transaction. *Id.* at 338 (referring to this Court's "framework for determining whether a given multiplication of charges arising from the same *act or transaction*" is unreasonable)(emphasis added); *see* R.C.M. 307(c)(4)(discussion) (stating "[w]hat is substantially one transaction should not be made the basis for an [UMC] against one person."). Here, Appellant fails to demonstrate the conduct underlying the identified charges constitutes the same act or transaction. Therefore, the doctrine of UMC is not applicable. In any event, Appellant has not shown an abuse of discretion.[17]

---

17. Discretion as viewed in the context of the unique aspects of the military justice system.

*Quiroz III,* 55 M.J. at 338.

It is this Court's opinion that Appellant is clearly guilty beyond any reasonable doubt of kidnapping his wife in addition to her unpremeditated intentional murder, and that the charges are not an UMC. Appellant, after having brutally smashed his wife's head and face against the concrete floor multiple times, thinking that he had, in fact, killed her, was in the process of removing her unconscious, bleeding body from his barracks room to avoid detection when he observed that she was still breathing. When Appellant intentionally continued with his criminal course of conduct to remove his wife's unconscious, dying body from Camp Lejeune, he, by purposeful design, extinguished even the extremely remote possibility and chance that she would be discovered and her life saved. As such, we decline to grant relief in Appellant's case.

### Conclusion

Accordingly, we affirm the findings and the sentence, as approved on review below.

Chief Judge OLIVER and Judge VILLEMEZ concur.